EUROPEAN & NORTH AMERICAN RAILWAY COMPANY, in equity, *vs.* JOHN A. POOR.

*Contract — interest of parties to, incompatible.*

The interests of the parties to a contract, whether of purchase or sale, or for work or labor, are adverse and inconsistent with each other.

If a director of a railroad corporation enter into a contract for the construction of the road of his corporation, he cannot then, nor subsequently, personally derive any benefit from such contract.

BILL IN EQUITY, heard on demurrer to a portion of the bill. The case is sufficiently stated in the opinion.

APPLETON, C. J. A trustee is one in whom property is vested in trust for others. Every person is to be deemed a trustee to whom the business and interests of others are confided, and to whom the management of their affairs is intrusted. The general rule is that a trustee, so far as the trust extends, can never become a purchaser of the property embraced within the trust save with the consent of all parties interested. The underlying principle is that no man can serve two masters. He who is acting for others cannot be permitted to act adversely to his principals. The agent to sell cannot become a purchaser of that which he is the agent to sell, for his position as selling agent is adverse to and inconsistent with that of a purchaser. So, the agent to purchase cannot at the same time occupy the position of a seller. It is not that in particular instances the sale or the purchase may not be reasonable. But to avoid temptation the agent to sell is disqualified from purchasing and the agent to purchase from selling. In all such contracts the sales or the purchases may be set aside by him for whom such agent is acting. The *cestui que trust* may confirm all such sales or purchases if he deems it for his interest. The affirmance or disaffirmance rests with him and the trustee when buying trust property from or selling it to himself, must assume the risk of hav-

ing his contracts set aside, if the *cestui que trust* is dissatisfied with his action.

The rule of equity is liberal, embracing within its purview all fiduciary relations, as those of principal and agent, attorney and client, solicitors, executors, guardians, etc.

The president and directors of a corporation must be held as occupying a fiduciary relation to the stockholders for and in behalf of whom they act. "The relation between the directors of a corporation and its stockholders," observes Johnson, J., in *Butts* v. *Wood*, 38 Barb. 188, "is that of trustee and *cestui que trust.*" "The directors," remarks Romilly, M. R., in the *York & Midland Railway Co.* v. *Hudson*, 19 Eng. L. & Eq. 365, "are persons selected to manage the business of the company for the benefit of the shareholders. It is an office of trust, which if they undertake it is their duty to perform fully and entirely." Persons, who become directors and managers of a corporation, place themselves in the situation of trustees; and the relation of trustees and *cestuis que trust*, is thereby created between them and the stockholders. *Scott* v. *Depeyster*, 1 Edw. Ch. 513; *Verplanck* v. *Mercantile Ins. Co.*, 1 Edw. Ch. 85. All acts done by the directors officially should be for the interests of the *cestuis que trust.* Holding a fiduciary relation they cannot be permitted to acquire interests adverse to such relation.

The bill alleges that "at a meeting of the directors of said company (the E. & N. A. Railway Co.) holden on the 25th day of August, 1865, a contract previously made between said company and a certain firm under the name of Pierce & Blaisdell, and signed by said defendant, as president of said company, and by said Pierce & Blaisdell, for the construction of said railroad, was approved, adopted, and confirmed. That said Pierce & Blaisdell did proceed under said contract in the construction of said railroad and received large sums of money under the same contract," and "that there was an agreement between said defendant while he was president and director as aforesaid, and said firm of Pierce & Blaisdell, or one of the members of said firm, that said defendant should receive a large sum of money for or on account of said con-

tract, or a part of the profits which might be received by said Pierce & Blaisdell under and by their performance of said contract, for the construction of said railroad."

To this portion of the bill the defendant has demurred, thereby admitting, for the purposes of the present argument, his interest in the contract of Pierce & Blaisdell with the corporation of which he was president and a director, made when he was acting as such and in the profits of which he was a participant while holding those positions.

As the agent to sell cannot purchase what he is to sell, nor the agent to purchase buy of himself, so the agent to contract cannot as agent contract with himself as principal. The interest of the parties to a contract, whether of purchase, a sale, or for work or labor, are adverse and inconsistent with each other. It is the duty of the directors of a corporation to act for the best interests of such corporation. If a director be a party to a contract entered into with himself, his duty as an officer is in conflict with his interests as an individual. This is equally so, whether he enters into the contract in its inception or subsequently acquires an interest in it. If he enters originally into the contract as director with himself as a party, it is not difficult to perceive who would have an advantage in the bargain. If he subsequently becomes a partner he place shimself in a position, in which, when any questions arise as to its performance his interest as a party to the contract conflicts with his duty as an officer. The general rule is, that directors cannot legitimately acquire an interest adverse to the corporation, and that if they purchase any claim against the company it is in trust for the company.

In the *Great Luxemburgh Railway Co.* v. *Magenay*, 25 Beavan, 586, the Master of the Rolls says, " I have, upon various occasions, stated what I considered to be the duties and functions of a director of a joint stock company. He is, in point of fact, not merely a director, but he also fills the character of a trustee for the shareholders, and he is, in regard to all matters entered into in their behalf, to be treated as an agent; therefore there attaches to a director,

for the benefit of the shareholders, all the liabilities and duties which attach to a trustee or agent. Accordingly, if a director enters into a contract for the company, he cannot personally derive any benefit from it. I accordingly held, in the case of the *Midland Railway Co.* v. *Hudson,* that the defendant as director and trustee was bound to give to the company the benefit of a large contract, entered into by him for iron, which had been used on the railroad, and to render to them the pecuniary advantage which he had derived from it. . . . If, as in the case of the *North Midland Railway Co.* v. `Hudson,* a director of a railway company enter into a contract for the purchase of a large quantity of iron in the shape of rails, but before it is wanted and before it has been actually delivered (for it took some time in that case to perform the contract with the iron-master) the price of iron should happen to rise, the trustee is not at liberty to put into his pocket the difference between the market price of the iron when delivered and that at which it was purchased. He cannot sell it again to the company as if it were his own property. The whole benefit must go to the shareholders and not to the director."

In *Benson* v. *Heathern,* 1 Y. & Coll. 326, the defendant being director of a joint stock company, established for the building, purchasing, hiring, and employment of steam vessels, purchases a vessel for £1340, and after sells it to the company, as from a stranger, for £1500, charging the company with commission at £1 per cent, the broker's earnest-money and the expenses of a bill of sale to himself, there being but one bill of sale. It was held that such a transaction could not stand in equity. In *Flint & R. R. Co.* v. *Dewey,* 14 Mich. 477, it appeared that the defendant, the secretary, and another director had been appointed a committee by the company for building and equipping the road. The committee entered into a preliminary contract with a certain party and on the same day that party assigned to the defendant secretary three-eighths of said agreement and four-tenths of a contract to be thereafter entered into; also, providing that they should be at three-eighths the expense of negotiating the bonds of the company which were to be

European and North American Railway Company v. Poor.

received by the contractor. In a suit by the complainant to compel the delivery of said bonds, it was held, that the transaction under which the defendant claimed was clearly fraudulent and void as against the complainant; that it was his duty (with the other members of the committee) in letting the contract to use his best efforts and judgment to secure the best terms he could for the company; but in joining with the contractor in taking this very contract, which they were employed to let, it became his interest to let the contract at the highest price. "It is impossible," observes Chisstiancy, J., "that there may have been no actual fraud, and that the contract would not have been let on better terms; but the principle of law applicable to such a contract renders it immaterial, under the circumstances of the case, whether there has been any fraud in fact, or any injury to the company. Fidelity in the agent is what is aimed at, and as a means of securing it, the law will not permit the agent to place himself in a situation in which he may be tempted by his own private interest to disregard that of his principal. And if such contracts were to stand until shown to be fraudulent and corrupt, the result, as a general rule, would be that they must be enforced in spite of fraud and corruption." "The general rule of law," observes Wayne, J., in *Michaud* v. *Girod*, 4 How. 555, "stands upon our great moral obligation to refrain from placing ourselves in relations which ordinarily excite a conflict between self-interest and integrity. It restrains all agents, public and private." To give effect to these views, in England it is provided by the Companies Clause Consolidation Act, 8 and 9 Vict. c. 16, that no person interested in a contract with the company shall be a director; and if any director, subsequent to his election, shall become concerned in any contract, the office of director shall become vacant, and he shall cease to act as such.

The demurrer admits every fact not answered to which is set forth in the bill.

It is, then, for the defendant to show that the general principles applicable to persons holding fiduciary relations are not to control in this particular case.

The demurrer, as the case stands, must be overruled, and the defendant must answer to that portion of the bill to which the de-murrer relates. When this is done and the proof is taken, the case will be ready for hearing on bill, answer, and proof.

*Demurrer overruled.*

CUTTING, WALTON, DICKERSON, and DANFORTH, JJ., concurred.

*J. W. Emery & Chas. P. Stetson,* for the plaintiffs.

*P. Barnes,* for the defendant.